# Morris, Nichols, Arsht & Tunnell llp

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

302 658 9200
302 658 3989 Fax

Mary B. Graham
302.351.9199
mgraham@mnat.com

June 25, 2008

**VIA E-FILING**

The Honorable Joseph J. Farnan, Jr.
United States District Court
Federal Building
844 King Street
Wilmington, DE 19801

      Re: *St. Clair Intellectual Property Consultants Inc. v. Siemens AG, et al.*,
           C.A. No. 06-403 (JJF)

Dear Judge Farnan:

We write on behalf of our client UTStarcom, Inc., a defendant in the above referenced litigation, and in response to St. Clair's letter of June 6, 2008. UTStarcom concurs with the May 28, 2008, letter sent on behalf of many of the Defendants in St. Clair's patent infringement cases, Civil Action Nos. 06-403, 06-404, and 04-1436. The later-filed actions should remain stayed until the Court and Federal Circuit have confirmed the proper claims construction.

**Judicial Efficacy**

It is a waste of judicial resources to move forward with this litigation before the Federal Circuit has clarified the claims construction of the patents at issue. As the Court has recognized, the USPTO construed the patents at issue in a distinctively different way than the Court did in the Fuji case. Tr. of April 11, 2008 hearing at 16. And, according to the Examiner, when one properly construes the claims "in light of the supporting disclosure ... a very different interpretation [than] that adopted by the court must be made." *See* Reexamination Office Actions at 2 (May 31, 2005), attached hereto as Ex. A.

Without clarification on the construction of the claims at issue the parties cannot go forward with the litigation. The Examiner's interpretation of certain claim limitations narrowed the scope of the patents-at-issue here. *See* letter from St. Clair to J. Farnan at Ex. 1

The Honorable Joseph J. Farnan, Jr.
June 26, 2008
Page 2

(June 6, 2008). This difference in scope puts the parties in a dilemma: Should they litigate based upon the USPTO's narrow construction or the Court's broader construction? *See* Tr. of April 11, 2008 hearing at 15 (noting that getting the Fuji case to the Federal Circuit is for everyone's benefit). The differences between the two constructions may be outcome determinative for the parties and yet they may be punished for arguing for the one over the other in light of the Court's previous orders in the Fuji case. *See Medtronic Navigation, Inc. v. Brainlab Medizinische Computersystems GMBH*, No. 98-1072, 2008 U.S. Dist. LEXIS 13483, at *18 (D. Colo. Feb. 12, 2008) (sanctioning attorneys for continuing to dispute claims construction and suggesting that an interlocutory appeal was the mechanism to resolve claim construction disputes).

These differences in claims constructions will be before the Federal Circuit in a relatively short amount of time because Fuji has committed to raising the USPTO's claim construction during its post-trial briefing. Tr. of April 11, 2008 hearing at 26. If the Court adopts the USPTO's claim construction then St. Clair will appeal the post-trial ruling; if the Court rejects the USPTO's claim construction then Fuji will appeal. Either way, the Federal Circuit will be asked to give *de novo* consideration to the distinctions between the two different constructions, which will include a review of the reexamination files. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 ("a court 'should also consider the patent's prosecution history, if it is in evidence'"). Until then, further litigation of these cases is premature.

### No Prejudice Will Result from the Stay

St. Clair does not provide factual basis for a finding of prejudice. Instead it makes several conclusory assertions about the supposed resulting prejudice. But, when one considers these claims it becomes evident that waiting for a determination on claims construction in the Fuji case will not be detrimental to St. Clair.

First, St. Clair's claim that it cannot license the patents at issue is unfounded, as its letter provides no explanation for why the pending litigation interferes with its licensing program. Quite the contrary, its letter states that the value of the patents is obvious. *See* St. Clair letter at III.B. If the value of the patents remains obvious then St. Clair should be able to continue its licensing practices and it should be able to negotiate licenses for valuable patents regardless of the litigation.

Second, St. Clair's claim of prejudice because the patents expire in 2010 makes no sense. Should St. Clair successfully litigate this action it will obtain a reasonable royalty rate for a period of time until the patents expire regardless of when the litigation concludes.

The Honorable Joseph J. Farnan, Jr.
June 26, 2008
Page 3

                                           Respectfully,

                                           */s/ Mary B. Graham*

                                         Mary B. Graham (#2256)

MBG/dla
Enclosures
cc:    Dr. Peter Dalleo, Clerk (via e-filing and hand delivery, w/encls.)
        Patricia Pyles McGonigle, Esq. (via e-filing and e-mail, w/encls.)
        Ronald J. Schutz, Esq. (via e-mail, w/encls.)
        Tamany J. Vinson Bentz, Esq. (via e-mail, w/encls.)

2383426

# EXHIBIT A



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

LERNER, DAVID, LITTENBERG, KRUMHOLZ & MENTLIK
600 SOUTH AVENUE WEST
WESTFIELD, NJ 07090

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. _90/006,438_.

PATENT NO. _6323899_.

ART UNIT _2600_.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

| *Office Action in Ex Parte Reexamination* | Control No.<br>90/006,438 | Patent Under Reexamination<br>6323899 |
|---|---|---|
| | Examiner<br>Brian C. Genco | Art Unit<br>2615 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

a☒ Responsive to the communication(s) filed on <u>23 October 2000</u>.   b☐ This action is made FINAL.
c☐ A statement under 37 CFR 1.530 has not been received from the patent owner.

A shortened statutory period for response to this action is set to expire <u>2</u> month(s) from the mailing date of this letter.
Failure to respond within the period for response will result in termination of the proceeding and issuance of an *ex parte* reexamination certificate in accordance with this action. 37 CFR 1.550(d). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**
If the period for response specified above is less than thirty (30) days, a response within the statutory minimum of thirty (30) days will be considered timely.

Part I   THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. ☒ Notice of References Cited by Examiner, PTO-892.    3. ☐ Interview Summary, PTO-474.
2. ☒ Information Disclosure Statement, PTO-1449.    4. ☐ _____.

Part II   SUMMARY OF ACTION

1a. ☒ Claims <u>1 - 4</u> are subject to reexamination.
1b. ☐ Claims _____ are not subject to reexamination.
2. ☐ Claims _____ have been canceled in the present reexamination proceeding.
3. ☒ Claims <u>3 and 4</u> are patentable and/or confirmed.
4. ☒ Claims <u>1 and 2</u> are rejected.
5. ☐ Claims _____ are objected to.
6. ☐ The drawings, filed on _____ are acceptable.
7. ☐ The proposed drawing correction, filed on _____ has been (7a)☐ approved (7b)☐ disapproved.
8. ☐ Acknowledgment is made of the priority claim under 35 U.S.C. § 119(a)-(d) or (f).
   a)☐ All  b)☐ Some*  c)☐ None     of the certified copies have
   1☐ been received.
   2☐ not been received.
   3☐ been filed in Application No. _____.
   4☐ been filed in reexamination Control No. _____.
   5☐ been received by the International Bureau in PCT application No. _____.
   * See the attached detailed Office action for a list of the certified copies not received.
9. ☐ Since the proceeding appears to be in condition for issuance of an *ex parte* reexamination certificate except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte* Quayle, 1935 C.D. 11, 453 O.G. 213.
10. ☐ Other: _____

cc: Requester (if third party requester)
U.S. Patent and Trademark Office
PTOL-466 (Rev. 04-01)     Office Action in Ex Parte Reexamination     Part of Paper No. 062005

Application/Control Number: 90/006,438  Page 2
Art Unit: 2615

Examiner notes Requester's comments on pages 3-6 regarding the court ordered definition of terms. While the court adopted the definition of terms proposed by the patentee, the Examiner is instructed to give claims their broadest reasonable interpretation in light of the supporting disclosure and claims are not to be evaluated in a vacuum. See MPEP 2106(II)(C). Examiner is in agreement with the comments made by the Requester on pages 6-11, that in light of the disclosure a very different interpretation that that adopted by the court must be made.

In particular, Examiner notes the disclosure of USPN 5,138,459 to Roberts et al. Examiner notes that the patentee indicated that the field of the invention is that in which a still camera converts a still picture into an operator selectable compressed digital signal format ..., formatted into Personal Computer (PC) compatible format. This is accomplished by formatting an already compressed digital frame into "either an IBM PC/Clone (such as GIFF) or Apple Macintosh (such as PICT II) image file format depending on the setting selected by the operator for a user switch 17 (Fig. 6) position on the control panel 2." (column 4, line 68 – column 5, line 4).

Examiner believes the confusion of the interpretation of the claim language arises out of the apparent disclosure that a user is selecting between two different image file types, such as between GIFF or PICT II. However, upon further inspection of the disclosure this is not found to be the case. Examiner notes that the disclosure goes on to teach that the user selects "the desired PC format (IBM PC/Clone or Apple Macintosh, etc.) via switch 17 (Fig. 6) on the control panel 2." (column 6, lines 42-45) As such, a user is selecting between the PC format by using switch 17, not the image file type. It appears that the equalization between the IBM PC/Clone and the GIFF image file as well as the equalization between the Apple Macintosh and

Application/Control Number: 90/006,438 Page 3
Art Unit: 2615

the PICT II image file arises out of the disclosure that "PICT and GIFF are the most common for the APPLE and IBM PC's and are therefore the preferred formats" (column 11; lines 37-39).

In looking at the disclosure on the whole a user is given an option for selecting between PC formats by using switch 17, wherein a particular image file type is assigned to each of the PC formats. For example, a user may select to format the compressed digital frame into IBM PC/Clone where the GIFF image file format has been assigned to the IBM PC/Clone format. As such, the image file is output as an IBM PC/Clone GIFF file. While Examiner notes that Roberts et al. discloses that other formats can be used this is accomplished by "changing the software format routines", i.e., reprogramming the camera. There is no disclosure in the Roberts et al. patents to suggest that once the user selects that the image is to be output as an IBM PC/Clone, for example, that the user is further given the option of selecting between various image file formats such as GIFF, TIFF, BMP, JFIF, etc.

As such, in light of the specification, the claim limitation "formatting the digital image signal in one of a plurality of computer image file formats" is interpreted to mean formatting the image signal as one of an IBM PC/Clone, Apple Macintosh, or other PC format.

**A.** With regards to the Kühberger reference provided by Requester, Examiner notes that this reference anticipates claims 1 and 2 as detailed in the rejection below.

**B-J.** Examiner notes that none of the references supplied in these grounds of rejection disclose formatting the image signal as one of an IBM PC/Clone, Apple Macintosh, or other PC format.

Application/Control Number: 90/006,438                                    Page 4
Art Unit: 2615

### *Claim Rejections - 35 USC § 102*

(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for a patent.

Claims 1 and 2 are rejected under 35 U.S.C. 102(a) as being anticipated by (WO 90/09717 to Kühberger).

In regards to claim 1 Kühberger discloses an electronic camera having an image pick-up unit and a storage device, a process for taking pictures and storing digital pictures, the process comprising:

generating a digital image signal corresponding to an image incident on the image pick-up unit (e.g., page 7, lines 7-12 of the translation);

formatting the digital image signal in one of a plurality of computer image file formats (e.g., page 4, lines 18-21; page 6, line 11-13, wherein Examiner notes that at the time of the invention at least the TIF image file format was platform independent and could be used in either an IBM PC/Clone or Apple Macintosh computer. Therefore Kühberger discloses that the image data can be output in a format readable by a standard computer, such as the TIF format, wherein at least the TIF image file format can be used in one of a plurality of computers, i.e., IBM PC/Clone or Apple Macintosh. As such, Kühberger discloses to format said digital image signal in one of a plurality of computer image file formats. See cited Tag Image File Format Revision 4.0 published April 31, 1987 for proof of TIF image file format being platform independent); and

storing the formatted image file in the storage device (e.g., page 7, lines 11-12 of the translation).

Application/Control Number: 90/006,438                                           Page 5
Art Unit: 2615

In regards to claim 2 Kühberger discloses a process as in claim 1, wherein the storage device is removable (e.g., Kühberger discloses using a floppy disk; page 8, lines 15-21 and page 9, lines 1-2 of the translation).

**STATEMENT OF REASONS FOR PATENTABILITY AND/OR CONFIRMATION**

The following is an examiner's statement of reasons for patentability and/or confirmation of the claims found patentable in this reexamination proceeding:

Claims 3 and 4 are still deemed allowable over the prior art of record. In particular, while Kühberger discloses to output the image in a computer readable format Kühberger does not disclose to select one of a plurality of computer formats to output the image into, i.e., Kühberger does not disclose to select whether to encode the TIF file for use on an IBM/PC Clone or an Apple Macintosh personal computer.

Claim 4 depends from claim 3.

Any comments considered necessary by PATENT OWNER regarding the above statement must be submitted promptly to avoid processing delays. Such submission by the patent owner should be labeled: "Comments on Statement of Reasons for Patentability and/or Confirmation" and will be placed in the reexamination file.

*Conclusion*

In order to ensure full consideration of any amendments, affidavits or declarations, or other documents as evidence of patentability, such documents must be submitted in response to

Application/Control Number: 90/006,438                                                Page 6
Art Unit: 2615

this Office action. Submissions after the next Office action, which is intended to be a final action, will be governed by the requirements of 37 CFR 1.116, which will be strictly enforced.

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Brian C. Genco who can be reached by phone at 571-272-7364 or by fax at 571-273-7364. The examiner can normally be reached on Monday thru Friday 8:30am to 4:30 pm.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, James Groody can be reached at 571-272-7950. The fax phone number for the organization where this application or proceeding is assigned is (703) 872-9306.

Any inquiry of a general nature or relating to the status of this application or proceeding should be directed to the customer service office whose telephone number is 571-272-2600.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free).

Brian C Genco
Examiner
Art Unit 2615

May 31, 2005

WENDY R. GARBER
SUPERVISORY PATENT EXAMINER
TECHNOLOGY CENTER 2600

James J. Groody
Supervisory Patent Examiner
Art Unit 262 2615